24444.   NORTON REALTY & LOAN COMPANY, INC. et al.
v. CITY OF GAINESVILLE et al.

ARGUED JANUARY 8, 1968—DECIDED MARCH 7, 1968.

*Norton, Cooper & Lang, William L. Norton, Jr.,* for appellants.
*Kenyon & Gunter, W. B. Gunter, Hulsey & Sims,* for appellees.

PER CURIAM.   This appeal is from the grant of what is denominated a judgment on the pleadings, which dismissed a petition attacking the rezoning of property.

The petition was filed in the Superior Court of Hall County by Norton Realty & Loan Company, Inc., and two of its officers and stockholders against the City of Gainesville and its commissioners.   The petition is in two counts, but only Count 1 is involved here since the enumerations of error relate exclusively to it.

The allegations of that count, insofar as necessary to recite, are those which follow.

The corporate plaintiff is the owner of Lots 30, 31, 32, and 33 of a named subdivision within the city.   On January 25, 1962, it purchased this and other property comprising an 18-acre tract fronting on U. S. Highway 129.

Prior to said purchase and continuing to the effective date of the rezoning ordinance in question this tract was zoned R-II, which permits development and construction of multi-family residences, including apartments.   Also, prior to such purchase plaintiffs conferred with named city officials and from them received certain assurances and approvals, including that this tract was zoned R-II, and that it could be developed as a residential subdivision in accordance with plans and specifications proposed by the plaintiffs.

Before purchasing the 18-acre tract plaintiffs determined that, because of the grade level of the four lots now in question, which front on U. S. Highway 129, they could not be developed as single family residential dwelling lots and must remain zoned R-II for possible future sale and development as duplexes, town houses or apartments. Thus, plaintiffs purchased said tract for development partly as a restricted residential subdivision and partly as possible multi-family units as permitted under R-II zoning. This dual plan of development was approved by and considered good land use and planning practices by the planning commission of the city.

Plaintiffs have expended over $75,000 in cash and development time and efforts. They surveyed and contracted for a street through the tract, prepared a restrictive covenant agreement for the subdivision which expressly excluded the four lots involved here, thereby leaving them to be developed as permitted under R-II zoning, and upon completion of paving and water system and approval of the city, began in March 1964 the sale of residential lots in the subdivision. In considering the possible use and development of the four lots prior to such purchase, plaintiffs would not have purchased the 18-acre tract and would not have made said expenditures unless they had known that the four lots could be developed for purposes authorized and permitted by R-II zoning in force at the time of purchase, and prior thereto.

The existence of R-II zoning of said tract was part consideration for plaintiffs' decision to purchase it for development of most of the tract as a residential subdivision.

In March 1967, following announcements of plans for construction and expansion of apartments in the vicinity, certain property owners filed a petition for rezoning of an area including the plaintiffs' four lots, so as to prevent construction of apartments or other multi-family units in such area. Upon learning through a local newspaper item of the action of the planning commission of the city on such petition, plaintiffs appeared before the city commission and opposed the rezoning. However, on July 12, 1967, the city allegedly enacted an ordinance, copy of which is attached, rezoning plaintiffs' four lots from R-II to R-I (single family residential). The plaintiffs contend, for a number of

reasons, that this rezoning ordinance is illegal and void. Under the view which we take of the case, it is not necessary to recite those contentions here.

These four lots were zoned R-II originally in 1956 and later in 1964 pursuant to a comprehensive zoning ordinance of the city. Plaintiffs have a vested right in the continuation and permanency of the R-II zoning of their four lots. The rezoning action amounts to a taking, confiscation, and complete destruction of plaintiffs' property, completely depriving them of the beneficial use thereof, in violation of stated provisions of the Federal and State Constitutions.

This count prayed that the ordinance be declared void as applied to plaintiffs' four lots, and that the defendants be permanently enjoined from enforcing or applying it to plaintiffs' property.

The defendants' answer denied the material allegations of the petition and alleged that such ordinance was passed pursuant to and in compliance with all applicable requirements of the city and state. Attached to it are documents relating to enactment of the ordinance. Under our view of the case, it is not necessary to set them out.

The defendants' motion for judgment on the pleadings, pursuant to Georgia Laws 1966, pp. 609, 623 (*Code Ann.* § 81A-112 (c)), asserted that no cause of action was stated upon which relief could be granted; that as to the count involved here the defendants' answer shows that the ordinance was passed in compliance with law; and that the petition should be dismissed because it seeks to enjoin the city from enforcing a valid ordinance under facts which do not authorize injunction, and also because it alleges mere apprehension of damage to a future speculative property use, not authorizing injunction.

The plaintiffs, in addition to their petition, relied upon two affidavits.

That of a real estate broker in the city recited, in material part, the following: that for stated reasons the four lots in question could not feasibly or practically be developed as single family residential properties of comparable quality to other houses in the area; that to restrict the use of this property to single family residences would amount to a complete restriction of its rea-

sonable use; that it is remotely possible that the lots might be capable of development as multi-family units; that single unit houses built there would have to be small and inexpensive; that they would be less attractive than others in the area; and that the fair market value of the lots would be approximately $12,000 to $15,000 as possible development under R-II zoning, but not more than $7,000 to $8,000 if R-I.

The essential features of the joint affidavit of the individual plaintiffs were those which follow.

Before purchase they determined that these lots could not be developed as part of the proposed residential subdivision. They determined to keep them zoned R-II for possible sale or development as multi-family residences, possibly duplexes, town houses or apartments, and therefore excluded them from the restrictive covenants covering the other lots. Realizing the problems of developing these lots but also realizing that they might possibly in the future be developed as multi-family residences, the plaintiffs purchased the tract with the thought of developing most of it as a single-family residence subdivision, and possibly developing these lots as multi-family residences. They would not have invested $75,000 in the development of this tract and would not have purchased it unless they had known that these lots could possibly be developed as authorized and permitted by R-II zoning regulations and ordinances in existence at the time of purchase and for many years prior thereto. They consider the lots worthless and economically unfeasible for development as single-family residential properties under R-I zoning.

Upon the case being docketed here the appellees filed a motion to dismiss the appeal.

■ We first deal with the motion to dismiss.

■ One ground is that appellants' brief was not filed within ten days after the docketing of the case, as required by Rule 20 of this court. 221 Ga. 884. While failure to timely file briefs may be ground for contempt, it is not ground for dismissal of the appeal. *Barrett v. State Hwy. Dept.*, 211 Ga. 876 (89 SE2d 652). This ground is not meritorious.

■ The second ground asserts that the enumeration of errors was not filed "at the time" the brief was filed in this court, as

required by Georgia Laws 1965, pp. 240, 243 (*Code Ann.* § 6-810). The enumeration of errors was filed within the time required for filing briefs. That the brief was not marked "filed" within that time due to nonpayment of costs does not invalidate the filing of the enumeration of errors. What is of decisive importance here is that the enumeration was filed in time. Simultaneous filing of the two documents is not required.

▪ The third ground recites that the appellants failed to file with the clerk of the trial court a copy of the enumeration of errors as required by Georgia Laws 1965, pp. 240, 243 (*Code Ann.* § 6-810). While this court has not passed upon the question, the Court of Appeals has on several occasions, and has held that such failure does not result in dismissal. See *Adams v. Morgan,* 114 Ga. App. 180 (150 SE2d 556); *Calloway v. State,* 115 Ga. App. 158 (154 SE2d 291); *Starke v. Lanier,* 115 Ga. App. 229 (154 SE2d 289). We agree with those rulings.

▪ The final ground complains that the brief of appellants does not conform to the requirements of Rule 16 of this court in that it fails to provide any reasons for this court's jurisdiction and also that it does not contain statements of the issues of law as made by the errors enumerated or contain references to the record showing the errors and issues. 220 Ga. 909, 912. While the brief does not fully comply with the requirements of Rule 16 in the respects complained of, such does not warrant dismissal of the appeal. The situation here is vastly different from that in *Hicks v. Maple Valley Corp.,* 223 Ga. 577 (156 SE2d 904), relied upon by appellees in support of this ground of their motion to dismiss.

▪ Since matters outside the pleadings were presented to and considered by the trial court, the motion for judgment on the pleadings must be treated as one for summary judgment and disposed of as provided in Georgia Laws 1966, pp. 609, 660 (*Code Ann.* § 81A-156). See Ga. L. 1966, pp. 609, 623 (*Code Ann.* § 81A-112 (c)). Therefore, we must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . ." Ga. L. 1966, pp. 609, 660 (*Code Ann.* § 81A-156 (c)).

■ We do find an issue of material fact as to whether the plaintiffs, as they contend, had a vested right to the continuation of R-II zoning of this property.

Although the various jurisdictions appear to be in sharp conflict on the issue, this court, in *Clairmont Development Co. v. Morgan*, 222 Ga. 255 (149 SE2d 489), has recognized that a property owner may under some circumstances acquire a vested right to the continuation of zoning regulations applicable to the land when he purchased it. See also, 58 AmJur 1034, Zoning, §§ 173, 174; Anno. 138 ALR 501-503.

In the *Clairmont* case, 222 Ga. 255, supra, the plaintiff company entered into a contract to buy certain property if it should be rezoned for commercial use. The company requested the rezoning and the property was rezoned. A short time later, but after the company had spent a considerable sum of money on the property to develop it for a shopping center, the zoning authorities reconsidered and gave the company notice that it had decided to change the zoning back to what it had been originally, which excluded commercial use. The company's petition to enjoin such rezoning from commercial back to residential alleged that the company, in reliance upon the board's rezoning, had spent much time, effort and money on the property to develop it for a shopping center. This court reversed the trial court's sustaining of general demurrers to the petition. The opinion stated (p. 258): "[The allegations] unquestionably show that the plaintiff has from its reliance upon such rezoning ordinance and the expenditures it has made in consequence thereof, acquired a vested property right and the . . . [United States and Georgia Constitutions] protect vested property rights. . . When this property right became vested this plaintiff indisputably had a right under the rezoning ordinance . . . to use the subject property for a shopping center and the zoning authority of Gwinnett County can not legally divest this right by the subsequent adoption of another ordinance prohibiting such use."

In the instant case the plaintiffs in their petition and affidavit state that they purchased this property in reliance upon its being zoned R-II, that they have invested and spent in excess of $75,000 plus considerable "time, efforts, worry and activities" in

the development of this property, and that they would not have invested this amount and would not have purchased the property unless they had known that the lots now in question could possibly be developed as authorized and permitted by R-II zoning regulations in existence at the time of their purchase and for many years prior thereto. They further state that if they had known that the city might rezone the property to R-I, thereby depriving them of the right to offer such lots for sale or development as permitted under R-II zoning, they would not have purchased or improved the property.

Under the *Clairmont* case and this evidence, we cannot say as a matter of law that the plaintiffs had no vested right to the continuation of the R-II zoning. In our view, genuine issues of material fact were presented as to whether the plaintiffs have a vested right to the continuation of the R-II zoning which was in force when they purchased the property and expended their money, time and efforts in its development.

The cases relied upon by the defendants as negativing the concept of vested right to continuation of zoning regulations, *Morgan v. Thomas*, 207 Ga. 660 (63 SE2d 659); *Neal v. City of Atlanta*, 212 Ga. 687 (94 SE2d 867) (one Justice not participating); *Seckinger v. City of Atlanta*, 213 Ga. 566 (100 SE2d 192), are not applicable in the situation here. In each of them the claim of a vested right to the continuation of prior zoning related to property not owned by those making such contention.

*Judgment reversed. All the Justices concur, except Mobley and Grice, JJ., who dissent.*

GRICE, Justice, dissenting. I disagree with Division 3 of the majority opinion and with the judgment of reversal.

As I view the situation, the plaintiffs are not entitled to the relief they seek for two reasons, each independent of the other.

1. The first is that they have shown no vested right to the continuation of R-II zoning as to the lots in question.

Expenditures in purchasing and developing land in reliance upon continuance of existing zoning, under the circumstances here, do not provide the owner with a vested right to such continuance. If they did, practically no rezoning could ever take place, because property owners, at some time or other, make ex-

penditures on their property in general reliance upon the existing zoning classification. Here, there were no actual plans or work done on these lots in contemplation of their use under R-II zoning. A street and a water system were established in the tract, but these also served the other thirty-three lots which have been developed as residential lots.

This court has previously dealt with this contention as to vested right to continuance of existing zoning.

In *Morgan v. Thomas,* 207 Ga. 660 (63 SE2d 659), the petition alleged that the entire area in question was zoned as "R-5, agricultural residential," and limited to single-family residences when the plaintiffs purchased their properties located therein, and that thereafter the area was rezoned to "A-1, apartment use." The record in the case shows that they alleged that "each of the petitioners herein, relying upon said 'Zoning Resolution' and the classification of each parcel of said property in said use district 'R-5,' purchased his or her property described hereinbefore after . . . the effective date of said 'Zoning Resolution' and proceeded to erect on each parcel of property houses as described hereinbefore"; and that ". . . petitioners, relying on the validity and continuity of the zoning residential had invested many thousands of dollars in single family residential improvements upon their adjacent property." They sought to enjoin the defendants from erecting apartment buildings. The opinion stated: "In the passage of the resolution where the properties of the plaintiffs and the defendants were classified for use as an agricultural residential district, the board did so under the police power, and *neither of the parties,* as property owners, *obtained any vested* right or interest that prohibited the board from subsequently changing the zoning classification to a different use." P. 664. (Emphasis supplied.)

In *Neal v. City of Atlanta,* 212 Ga. 687 (94 SE2d 867) (one Justice not participating), the plaintiffs alleged that the area was zoned in 1954 in part for community business and in part for single-family dwelling; that in 1956 the city rezoned to permit a shopping center; and that the plaintiffs have vested property rights in consequence of the city's 1954 zoning ordinance. The record in that case shows that the plaintiffs also alleged that they and others "purchased property in accordance with said zoning

and erected thereon residences and houses in which they live or have purchased and now own homes in said area in accordance with said zoning." This court held that "the city has power not only to zone but to rezone property; and in these circumstances it is well settled by the ruling in [the *Morgan* case, 207 Ga. 660, supra], that the plaintiffs have no vested property rights in virtue of the comprehensive zoning ordinance which the City of Atlanta adopted on December 22, 1954, as claimed by them." P. 689.

In *Seckinger v. City of Atlanta*, 213 Ga. 566 (100 SE2d 192), the plaintiffs attacked the rezoning of property from single family dwelling and community business entirely to community business. The record shows that the petition contained the same allegations made in the *Neal* case, supra, as to purchase of property and construction of houses. This court said: "The general law of 1946 vests in governing authorities of municipalities the power to rezone in the manner provided by the amending ordinance here involved. It does not appear that the rights of any of the plaintiffs have been violated. A benefit derived from public acts of government is not a legal right in perpetuity against the exercise of governmental power in the future," citing the *Morgan* case, 207 Ga. 660, supra. Pp. 568-569.

These three decisions reject the claim of vested right to continuation of existing zoning because of reliance thereon and expenditures in purchasing and improving the property. They cannot be disregarded because the factual situations involved claims of vested right to continuance of existing zoning of the property of others, instead of that of those making such contention. See *Morgan v. Thomas*, 207 Ga. 660, supra, where this court said that "neither of the parties" obtained any vested right.

For support of its position the majority rely upon *Clairmont Development Co. v. Morgan*, 222 Ga. 255 (149 SE2d 489). That case, as I analyze it, is patently distinguishable from the situation here. In *Clairmont* the county authorities, with actual knowledge of the developers' plans and in response to their request, rezoned the property to commercial use, but later reconsidered and notified the developers that they had decided to initiate a rezoning of the property from commercial back to residen-

tial use. In the case at bar, there is no allegation that the appellees even had knowledge of the appellants' "possible" plans. In *Clairmont,* it was alleged that in addition to the contract to buy the land, expenditures were made in the actual development of the land for a shopping center; here, appellants alleged only that money and time were spent in development of the tract, several lots of which they thought they might use for multi-family units, and there are no allegations that anything was spent specifically for apartment development or planning. In *Clairmont,* a building permit had been applied for and the developers had met all the qualifications for such permit prior to notice of the decision to rezone; here, there is no allegation as to any application for a permit or any definite plans on it. In *Clairmont,* it was alleged that the whole intended commercial use of the land would be impossible under residential zoning and the developers would have no need for the property under such zoning; here, affidavits showed that the lots could be developed and used for residences under R-I zoning, although less profit might be made than if they were used for multi-family units. In ·*Clairmont* the zoning, purchase, expenditures and rezoning constituted virtually one transaction covering approximately two months; here, the property was purchased in 1962, and the rezoning was in 1967, more than five years later.

The holding by the majority, unless it is corrected, will thwart efforts to rezone property. The holding amounts to this: once an area is zoned for a particular purpose and a person purchases and improves the property, he can prohibit the local authorities from ever changing that zoning classification by asserting that he purchased and improved in reliance upon it. The practical effect is that under these circumstances zoning is frozen.

Therefore, for this reason alone, I consider the ruling without support of authority and erroneous.

2. However, even if these appellants did have a vested right to continuance of the existing zoning, the pleadings and affidavits make it plain that they are not entitled to the relief they seek.

The showing made is one of mere apprehension of injury and thus does not authorize equitable relief. The plaintiffs show only

uncertainty, possibility, and speculation as to whether they desire to use the lots for multi-family units in the future and as to the suitability of the property for such units. They have not alleged actual damage.

The adoption of this rezoning ordinance has not itself caused any injury to the appellants, and there has been shown no attempt to enforce it so as to prevent them from using their property contrary to its terms. Under these circumstances, this court has repeatedly held that injunction will not be granted. We refer to several of the decisions now.

In *Zaring v. Adams,* 188 Ga. 97 (3 SE2d 635), the plaintiff who owned the tracts of land on which he operated businesses sought to enjoin the county authorities from considering and passing proposed zoning regulations restricting his and other property to residential uses. His petition recited that he apprehended "that his present business enterprises would prosper, and that some time in the future it would be advisable and necessary for him to augment his facilities by erecting additional buildings on his property to be used in his business, all of which the proposed zoning regulations, if adopted and passed, would prohibit."

In holding such petition insufficient, this court said: "The writ of injunction, commonly referred to as the 'strong arm of equity,' as a general rule may be sought only where there is a manifest necessity therefor to prevent irreparable injury to some right of the plaintiff, by reason of impending acts or conduct of another. Accordingly, it may not be resorted to where it does not appear that the acts and conduct sought to be enjoined will, if committed, work substantial and irreparable injury to the plaintiff. In the present case the plaintiff seeks to enjoin the consideration of and passage by the board of commissioners of a proposed regulation which will be applicable to certain property owned by him. *The passage by the board of such a proposed regulation will not of itself work such an injury to the plaintiff.* It will be in sufficient time to appeal to the courts to determine the legality of this regulation when there is in some manner an attempt to enforce it so as to prevent the plaintiff from using his property in a way contrary to its terms, if the occasion should ever arise

when the plaintiff may actually desire to do so." P. 98. (Emphasis supplied.)

In *City of Atlanta v. Miller*, 191 Ga. 767 (13 SE2d 814) (one Justice dissenting), the plaintiffs, the lessee and owner of certain land, sought to enjoin the City of Atlanta from enforcing a zoning ordinance in an area in which the lessee carried on a business. It was alleged that the value of the land involved would be greatly diminished, if not destroyed, if it were zoned to conform to the zoning ordinance.

This court, in reversing the overruling of the defendants' general demurrer to the petition, declared that when portions of the petition relating to criminal prosecution are carved from the petition, "there does not remain a single allegation of past or present injury to either of the petitioners resulting from the zoning ordinance of the City of Atlanta. It is true that the petition asserts, as reasons why it is contended that the ordinance is unconstitutional and void, that if the land involved should be divided and confined to the uses required by the ordinance it would thereby be rendered virtually worthless. However, such allegations do not constitute averments that such injuries have yet been suffered. . . No claim is made that the mere existence of the ordinance has caused injury to either of the petitioners or the property involved. No prospective purchaser or lessee is alleged to have been lost because of the existence of the ordinance. In this situation, even if the ordinance is conceded to be void, neither of petitioners, failing as they do by this petition to show an injury inflicted upon them by the existence of the ordinance, would be entitled to equitable relief because of any anticipated injury therefrom." Pp. 770-771.

In *Todd v. City of Dublin*, 212 Ga. 36 (89 SE2d 889), the petition alleged that the plaintiff, who was a chiropractor, had an office in an area which was zoned for residences, and that the city claimed it was a violation of the zoning ordinances for him to have an office and practice there and gave him 30 days to move his office. This court affirmed the dismissal of the petition on general demurrer. It pointed out that this was mere apprehension of injury based on a bare threat, that "no overt

act has been committed by the [city and its officials] which injuriously affects the plaintiff's person or property. . ."

In *Mayor &c. of Athens v. Mu Beta of Chi Omega House Corp.*, 219 Ga. 423 (133 SE2d 888), the plaintiffs sought to enjoin named officials from enforcing an amendment to the city's zoning ordinance or issuing a building permit for construction of a building in a described area for a use inconsistent with the ordinance as it existed before such amendment, on the ground that such would adversely affect the value and enjoyment of their property which was located in close proximity to the rezoned area. The defendants demurred on the ground that the petition showed only a mere apprehension of injury and failed to show that any person had applied for a permit in the rezoned area or that the city had under consideration an application for a building permit in the area or that any overt act had been committed by the defendants or anyone acting under the rezoning ordinance. This court, citing the *Miller* case, supra, reversed the overruling of such general demurrers and held that the petition alleged mere apprehension of future injury to property rights as there was no allegation that the city or any third person had done any act or threatened to do any act under the ordinance which would injure the property of the plaintiffs. It said that "For aught that appears, the city may never permit a local business in this area, or it may repeal the ordinance." P. 426.

The rule of these cases, unbroken and extending for approximately twenty-five years, is manifest. The mere existence of the zoning ordinance complained of, with no actual injury sustained, is insufficient to challenge the ordinance. This rule cannot be denied here because of factual differences which do not alter the principle.

In the case now before us the allegations and evidence are equally, if not more, speculative or contingent as to any injury.

The most that is shown is that the plaintiffs, prior to purchase of the property, determined that the four lots in question should remain zoned R-II for possible future development as multi-family units, and that they later purchased the entire tract for development partly as restricted residential and partly as possible multi-family units.

The plaintiffs do not show that the mere existence of the rezoning ordinance has caused any injury. The allegation in the petition that "the rezoning action amounts to a taking or confiscation or complete destruction of said property, completely depriving petitioners from the beneficial use thereof" is a mere conclusion and does not raise an issue as to any such injury. The facts in the petition and affidavits do not support it, because as pointed out above, they do not show any definite plans or intentions but only that the plaintiffs contemplate "possible" use of the lots as multi-family units. In fact, the plaintiffs do not even show that these lots are actually usable for multi-family units under R-II zoning. The affidavit of the real estate broker says it is "remotely possible" that the lots may be capable of such development. The plaintiffs' own affidavit states only that the lots can "possibly" be developed as permitted under R-II zoning. The recitals in the plaintiffs' affidavit as to value, particularly that they consider "the lots as worthless and economically unfeasible for development as single family residential properties . . ." are also conclusions. The plaintiffs may never suffer any injury because the lots may not in fact be capable of development under R-II zoning and also because they may never desire to use the lots as multi-family units.

Furthermore, the above allegations necessarily depend upon the enforcement of the rezoning ordinance. The plaintiffs concede this by their allegation that "should the ordinance be enforced," they will be injured in a certain sum. Of the utmost significance is the absence of any allegation or recital as to any act by the city to enforce it. The decisive nature of this is emphasized in the decisions of this court hereinbefore referred to.

For both of these reasons, no vested right and mere apprehension, I am convinced that the holding of the majority is wrong. Accordingly, I would affirm with direction.

I am authorized to state that Mr. Justice Mobley concurs in this dissent.